726 So.2d 1210 (1998)
Sue MARTIN a/k/a Sue Marshall a/k/a Sue Martin Marshall, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00332 COA.
Court of Appeals of Mississippi.
December 30, 1998.
*1211 Mark Ivah Lampton, Attorney for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
Before McMILLIN, P.J., and HERRING and KING, JJ.
McMILLIN, P.J., for the Court:
¶ 1. Sue Martin has appealed her conviction of conspiracy to distribute cocaine. She raises two issues on appeal. First, she claims that the State was permitted, over defense counsel's objection, to argue an incorrect theory of the law of conspiracy during summation, the result of which was to deny her a fair trial. Secondly, she claims that the trial court erred in admitting certain post-arrest jailhouse statements purported to have been made by her or by other co-conspirators with whom she was conversing. We conclude that the first issue is without merit. We further conclude that the trial court erred in admitting evidence of the defendant's jailhouse conversation, but find that the error did not serve to deprive Martin of a fundamentally fair trial. Therefore, we affirm her conviction.

I.

Facts
¶ 2. The evidence of a conspiracy to distribute illicit drugs consisted primarily of a number of witnesses who testified to repeated instances of purchasing crack cocaine at a bar operated by Martin in Pike County. The evidence demonstrated that persons desiring to purchase cocaine could, with little difficulty, purchase the drug from Martin, from her sister who was often at the bar, or from another female employee of the establishment. There was additional evidence that tended to show that Martin's brother was involved in supplying the drugs that were sold at the bar. From the nature of the testimony of the various witnesses for the prosecution, the jury could reasonably draw the inference that Martin was complicit in those sales that were actually consummated by those other individuals mentioned, and thus, conspiring with them for that purpose.
¶ 3. Martin countered this evidence by testifying in her own defense and telling the jury that she had a severe case of drug dependency that had grown so bad that she was basically unable to function beyond efforts to accumulate sufficient money to buy more drugs, whereupon she would dispatch one or both of two trusted individuals to purchase drugs from a source unknown to Martin. According to Martin, she and these individuals would then consume the drugs in the company of each other. She did not specifically deny any drug trafficking at her business, but denied any involvement in it, relying primarily on her drug-induced incapacity as an explanation for her failure to deal with any such activity that may have occurred.
¶ 4. On this evidence, the jury returned a verdict of guilty.

II.

The First Issue: Improper Legal Theory in Summation
¶ 5. The prosecuting attorney in summation argued that Martin's own testimony, *1212 even if believed in its entirety by the jury, constituted an admission of involvement in a criminal conspiracy rather than a defense to that charge. According to the prosecutor, Martin's act of commissioning others to purchase drugs on her account, furnishing the funds for the purchase, and subsequently consuming a portion of those drugs herself while furnishing another portion to her purchasing agent, constituted a conspiracy to distribute. Defense counsel objected to this argument as being contrary to the law. He claimed that an intention to acquire drugs for the purpose of re-selling them to others was a necessary element of the crime of conspiracy to distribute drugs. At best, the defense argues, proof that Martin was in the practice of commissioning others to buy drugs for her own use indicated a conspiracy to possess illegal drugs and not a conspiracy to distribute. Thus, Martin argues, the State's legal theory was wrong, yet the State was permitted to argue this incorrect theory to the jury with the Court's implicit endorsement (arising out of the fact that the court overruled defense counsel's objection). This circumstance, according to Martin, leads inevitably to the conclusion that the jury's verdict was fatally tainted as being potentially based on an improper legal theory.
¶ 6. The crime of conspiracy arises when two or more persons conspire to commit a crime. Miss.Code Ann. § 97-1-1(a) (Rev.1994). The distribution of cocaine is a crime as recognized by Mississippi Code section 41-29-139(a)(1). Miss.Code Ann. § 41-29-139(a)(1) (Supp.1998). "Distribute" has been defined as a "means to deliver other than by administering or dispensing a controlled substance." Miss.Code Ann. § 41-29-105(l) (Supp.1998). It does not necessarily involve a sale. Rogers v. State, 599 So.2d 930, 934 (Miss.1992). The delivery of drugs to third persons, whether or not accomplished in exchange for money or other consideration, is an act of distribution for which the law will punish the deliverer. Accepting Martin's testimony as true in every respect, the question arises as to whether, assuming the plan entered into between Martin and her employees was carried to fruition, an act of criminal distribution would have occurred. We conclude that it would. So long as Martin was furnishing the capital for the acquisition of the drugs and the drugs were being purchased at her specific direction or request, she would have come into constructive possession of the drugs at the time of purchase and would be the "owner" of the drugs for purposes of analysis (conceding that such contraband cannot be truly owned in the full sense of that word under the law). According to Martin, it was the standard procedure in such an acquisition that she would share a part of the acquired cocaine with those individuals who had provided the physical effort to make the acquisition. This subsequent delivery by Martin, whether actual or merely constructive, could be seen as a form of compensation for services rendered. This subsequent delivery by Martin of a portion of her purchase would appear, beyond question, to be a "distribution" as that term is understood in the drug laws of this State. It is not unlike a user of drugs embarking on a plan to acquire a certain quantity of drugs and to sell a portion of them to finance the transaction, reserving the remainder for his own use. The sole purpose of the plan would be to facilitate personal use of drugs, yet there is no doubt that a sale in furtherance of the plan would be a criminal distribution. In this case, the reason for the distribution by Martin to an employee was to facilitate Martin's drug use without exposing her to the risk of dealing directly with a drug dealer. In such a case, we think that an illegal "distribution" has occurred. Therefore, insofar as Martin's testimony indicated a more-or-less standing agreement that drugs would be acquired and disposed of in the manner she indicated, we are satisfied that such testimony would, indeed, demonstrate the existence of a criminal conspiracy to distribute cocaine.
¶ 7. In actuality, we are of the view that the evidence of Martin's guilt in the more traditional sense as presented by the State in its case-in-chief was overwhelming. We further find Martin's own testimony in her defense *1213 to be somewhat far-fetched. Thus, we are satisfied that, in all probability, the jury convicted her based on the State's evidence and the theory of the case that evidence supports, and not on the strength of Martin's testimony and the State's alternate theory advanced in summation to meet that testimony. However, working on the somewhat unlikely assumption that the jury convicted Martin on the strength of her own testimony, we can only note that, once the defense presents its evidence, the State is entitled (and obligated) to demonstrate in all permissible ways that a conviction is proper even in the face of the defense's evidence. In the proper circumstance, that responsibility of the prosecution may extend to advancing alternate legal theories that would permit a conviction under the indictment even if the defense's evidence were to be accepted by the jury. That is what happened in this instance, and we find no error in the State's chosen method of responding to the defendant's evidence.

III.

The Second Issue: Impermissible Hearsay
¶ 8. One witness who testified for the State had been incarcerated in the same cell with Martin after Martin was arrested. This witness testified to hearing a conversation involving Martin, her sister, and a third individual. The specific speaker was never identified, but the witness testified that someone in the conversation made the statement that, if she could get out on bond, she could quickly make back the money to pay for the bond and that if she ran low on her supply, she could be readily restocked by her brother. This evidence was first proffered by the State outside the presence of the jury and defense counsel interposed an objection based on hearsay. The State countered that the evidence was admissible either (a) as "a statement by a co-conspirator ... during the course and in furtherance of the conspiracy..." and, thus, not hearsay under Mississippi Rule of Evidence 801(d)(2)(E); or (b) as Martin's own out-of-court statement constituting an admission, and, thus, not hearsay under Mississippi Rule of Evidence 801(d)(2)(A).
¶ 9. The trial court found the evidence to be admissible under both theories and permitted the jury to hear it. Martin now assigns that as reversible error.
¶ 10. If the statement concerning apparent plans for future cocaine sales had been, in fact, made by someone other than Martin herself, then it is difficult to see how it could have been in furtherance of an on-going conspiracy involving Martin. The statement concerned only the speaker and the speaker's brother, who would act as the supplier of drugs in the event the speaker's inventory should need replenishing. The statement does not shed any light on past events and, if made by someone other than Martin, contemplated events that would, in all likelihood, occur at a time when Martin remained incarcerated. There was no indication as to how Martin would have participated in or benefitted from these contemplated future drug transactions if she were not the speaker. While there may be wide latitude as to the admissibility of evidence in a criminal conspiracy case, nevertheless, there must be some rational basis to tie evidence of this nature to the existence of the conspiracy charged and it cannot be used simply for the purpose of showing the defendant's association with others who openly discuss their drug-dealing plans.
¶ 11. Had the evidence shown that the statement was made by Martin herself, it could arguably be admissible as an admission, since it would suggest her involvement and the involvement of another person in an on-going arrangement to sell drugs. The evident failure in this theory of admissibility is that the witness could not identify Martin as the speaker. In the absence of any proof making it more likely than not that Martin was the person who spoke these words, this evidence simply could not be deemed an admission by a party.
¶ 12. There is, further, no possibility that the evidence, if spoken by another in Martin's *1214 presence, would be admissible as an adopted admission. If made by anyone other than Martin, the statement does not, by any interpretation, indicate an involvement on Martin's part in a scheme or plan to distribute illegal narcotics so that there would have been no cause on her part to protest the statement as wrongfully implicating her in illegal activity.
¶ 13. Nevertheless, not every error by the trial court in admitting evidence that should have been excluded requires the conviction to be reversed. The rules of evidence say that reversal is not the proper result "unless a substantial right of the party is affected...." M.R.E. 103(a). Case law has long held that, in order to be reversible error, such evidentiary rulings must have had the effect of denying the defendant a fundamentally fair trial. Peterson v. State, 671 So.2d 647, 656 (Miss.1996).
¶ 14. Although we are satisfied that this evidence of an overheard jailhouse conversation ought to have been excluded, we find that the testimony of this witness was brief and was on a circumstance that was only peripheral to the more central issues on which this trial was conducted. The direct evidence of Martin's complicity in an on-going conspiracy to use her business as a convenient place to deal in drugs was overwhelming. There was nothing particularly inflammatory in the rather inconclusive testimony of Martin's cellmate about the alleged overheard conversation in which the witness could not even identify the speaker. This Court, therefore, finds that the admission of this evidence did not have the effect of denying Martin a fundamentally fair trial and we decline to reverse her conviction on this basis.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF CONSPIRACY TO COMMIT THE CRIME OF UNLAWFUL DISTRIBUTION OF COCAINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $500,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
BRIDGES, C.J., THOMAS, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.