ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. Andretti Camper was convicted by a jury in the Circuit Court of Simpson County of aggravated assault and sentenced by the trial court to serve a term of eight years in the custody of the Mississippi Department of Corrections. The trial court denied Camper’s motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. Camper now appeals and raises the following issues:
 

 I. WHETHER THE TRIAL COURT ERRED IN ACCEPTING THE STATE’S RACE-NEUTRAL REASONS FOR THE PEREMPTORY STRIKES OF THREE AFRICAN AMERICAN PROSPECTIVE JURORS FOLLOWING A
 
 BATSON
 
 OBJECTION
 

 II. WHETHER THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
 

 Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On April 16, 2006, Camper was traveling through D’Lo, Mississippi in the passenger seat of his car while Precious Rose, Camper’s then girlfriend, drove. Tony Edwards was playing dominos in front of a café in D’Lo, and upon seeing Camper’s vehicle, Edwards decided to stop the vehicle and confront Camper. After the vehicle stopped, Edwards walked around the vehicle and began arguing with Camper because Edwards believed that Camper had been spreading rumors that Edwards was a snitch. During the argument, Edwards reached into the vehicle and slapped Camper. Subsequently, Edwards was shot in the abdomen, and Camper’s vehicle drove away from the scene. After traveling a short distance, Rose stopped the vehicle and allowed Camper to drive. Shortly thereafter, Edwards got in a car with his cousin who drove him to the hospital.
 

 ¶3. At the Simpson County Hospital, Dr. Amneuy Chiemprabha (Dr. Chiem) advised that Edwards should be transferred to University Medical Center in Jackson for observation, but Edwards decided to leave the hospital after his initial treatment. While in the hospital, Edwards was interviewed by Deputy Bernard Gunter of the Simpson County Sheriffs Department. Edwards told Deputy Gunter where the shooting had happened, and Deputy Gun-ter visited the scene and recovered a .9-millimeter shell casing.
 

 ¶ 4. Camper was indicted for aggravated assault, and a trial was held in the Circuit
 
 *1074
 
 Court of Simpson County. During jury selection, the prosecution’s first five peremptory challenges were used to strike five African American prospective jurors, and the defense raised
 
 Batson
 
 challenges. In response, the prosecution offered race-neutral reasons for the strikes of the prospective jurors, which the trial court accepted. The specific race-neutral reasons and the trial court’s basis for accepting them -will be addressed below, as needed.
 

 ¶ 5. At trial, Camper testified that he did not have a pistol with him on the day in question. Instead, Camper stated that Edwards had a pistol tucked in the waistband of his pants, which he displayed to get Rose to stop the car, and Camper testified that he and Edwards were tussling over the pistol when it fired. Camper stated that he threw the pistol out of the car window at the scene of the shooting. Camper claimed that he reacted the way that he did because he believed that Edwards was about to shoot him.
 

 ¶ 6. Edwards testified that he did not have a pistol, and that he merely flagged the car down to stop it. Edwards stated that Camper had shot him after he slapped Camper. Edwards also admitted that he had testified in a previous unrelated trial which resulted in a conviction and that he later recanted his testimony, admitting that it was not true.
 

 ¶ 7. Rose testified that she was driving Camper’s car when Edwards stopped them; she heard them arguing; she heard a slap; she heard a gunshot a few seconds later; and after leaving the scene of the shooting, Camper threw something from the car into the woods. Rose also testified that she never saw a pistol during the incident and had no idea where the pistol came from.
 

 ¶ 8. According to Deputy Gunter, Edwards said that he had been shot by Camper. Deputy Gunter went on to testify that he had recovered a .9-millimeter shell casing from the scene, and that a pistol was never found. Deputy Gunter also testified that he had previously taken a statement from Rose. Deputy Gunter testified that Rose had previously told him that she saw a pistol in Edwards’s waistband and that Camper shot Edwards with Edwards’s pistol.
 

 ¶ 9. Dr. Chiem testified that he treated Edwards in the Simpson County Hospital emergency room for an abdominal gunshot wound, and that it was a serious bodily injury.
 

 ¶ 10. The jury found Camper guilty of aggravated assault. As previously mentioned, he was sentenced to eight years in the custody of the MDOC. From this conviction and sentence, Camper appeals.
 

 ANALYSIS
 

 I. RACE-NEUTRAL REASONS
 

 ¶ 11. Camper argues that the trial court erred in accepting the State’s race-neutral reasons for the peremptory strikes of three African American prospective jurors following an objection pursuant to
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Camper claims that the State exercised these peremptory challenges in a raeially-discrimi-natory manner. He argues that the State failed to provide race-neutral explanations for the strikes, and the trial court failed to make determinations as to whether the State had engaged in purposeful discrimination in exercising the strikes. We disagree.
 

 ¶ 12. Our standard of review relating to a
 
 Batson
 
 challenge is well settled. “This Court reviews a trial court’s ruling on a
 
 Batson
 
 challenge with great deference and will not overturn the trial court’s ruling unless it is clearly erroneous or against the overwhelming weight of the evidence.”
 
 *1075
 

 Pruitt v. State,
 
 986 So.2d 940, 942(¶ 8) (Miss.2008) (citing
 
 Flowers v. State,
 
 947 So.2d 910, 917(¶ 8) (Miss.2007)). “On appellate review, the trial court’s determinations under
 
 Batson ...
 
 are accorded great deference because they are based, in a large part, on credibility.”
 
 Coleman v. State,
 
 697 So.2d 777, 785 (Miss.1997). “We give such deference to the trial court’s findings because the trial judge is in the best position to evaluate the demeanor and credibility of the attorney offering the gender/race-neutral explanation.”
 
 Perry v. State,
 
 949 So.2d 764, 767(¶ 7) (Miss.Ct.App.2006) (citing
 
 Lynch v. State,
 
 877 So.2d 1254, 1271(¶ 50) (Miss.2004)).
 

 ¶ 13.
 
 Batson
 
 provides the procedure that must be used when the defendant raises an objection based on the defendant’s belief that peremptory challenges are being used to remove members of the defendant’s race from the jury as a result of purposeful discrimination.
 
 Batson,
 
 476 U.S. at 96, 106 S.Ct. 1712. A successful
 
 Batson
 
 challenge requires the following:
 

 First, the defendant must establish a prima facie case of discrimination in the selection of jury members. The prosecution then has the burden of stating a racially[-]neutral reason for the challenged strike. If the State gives a racially[-]neutral explanation, the defendant can rebut the explanation. Finally, the trial court must make a factual finding to determine if the prosecution engaged in purposeful discrimination. If the defendant fails to rebut, the trial judge must base his decision on the reasons given by the State.
 

 Thorson v. State,
 
 721 So.2d 590, 593(¶2) (Miss.1998) (internal citations omitted). To satisfy the final requirement, the trial judge must make a determination of whether the prosecution’s race-neutral reason is merely a pretext for discrimination.
 
 Booker v. State,
 
 5 So.3d 356, 358-59(¶4) (Miss.2008).
 

 A. JAMES WARREN
 

 ¶ 14. With respect to prospective juror James Warren, the prosecution’s race-neutral reason was his disinterest in the proceedings and his living situation. The State explained: “I think Warren looked disinterested^] and he looked kind of sleepy. The State would also state that Warren lives in a known drug area, [that] being Bill Womack Road.” The trial court responded: “Are you excusing white jurors who live in that area?” The prosecutor answered by stating, “I didn’t see anyone else who lived on that road, Your Honor.” Camper’s attorney replied that he did not think Warren looked disinterested, and he did not know if he lived in a known drug area. The trial court accepted the prosecution’s race-neutral reason on the condition that the prosecution was excluding all white prospective jurors that lived within suspected drug areas. The trial judge was not in error because living in a high-crime area has been accepted by the Mississippi Supreme Court as a race-neutral reason for the exercise of a peremptory strike.
 
 Lynch,
 
 877 So.2d at 1271-72(¶ 51).
 

 B. ANNETTE LAMPTON
 

 ¶ 15. The prosecution’s reason for excluding Annette Lampton was that she “look[ed] disinterested[,] and she had her hands crossed during the voir dire procedure.” The trial court made its factual finding concerning Lampton by holding that bad body language was an acceptable race/gender neutral reason. It was not error for the judge to accept the prosecution’s reason, because body language has been accepted by the Mississippi Supreme Court as a race-neutral reason for the exercise of a peremptory strike.
 
 Id.
 

 
 *1076
 
 C. SALRINA McLAURIN
 

 ¶ 16. Regarding prospective juror Salrina McLaurin, the prosecution stated: ‘Tour Honor, Ms. McLauren looked kind of sleepy. She wasn’t paying attention.” In response, the trial judge stated that the Mississippi Supreme Court has held inattentiveness as a permissible reason provided that it is equally applied. The trial court was correct that inattentiveness is an acceptable race-neutral reason for striking a prospective juror. “Inattentiveness alone has been accepted as a race-neutral explanation for the exercise of a peremptory strike.”
 
 Horne v. State,
 
 825 So.2d 627, 636(¶24) (Miss.2002) (citing
 
 Puckett v. State,
 
 788 So.2d 752, 760(¶ 18) (Miss.2001)).
 

 ¶ 17. When considering a
 
 Bat-son
 
 objection, the trial court should consider the racial composition of the entire veni-re panel, the jurors considered for service, and the jurors and alternates who actually served. Trial courts and attorneys have a duty to populate the record with adequate information concerning the racial composition of prospective jurors in order for the trial and appellate courts to fully analyze the voir dire proceedings. It is extremely difficult, if not impossible, for an appellate court to declare the trial judge’s decision as clearly erroneous or against the overwhelming weight of the evidence without knowing the racial and/or gender composition of the venire and petit jury. The record before us does not contain adequate information to determine the racial composition of the venire or petit jury. With that limitation, we have considered the race-neutral reasons offered by the State.
 

 ¶ 18. Following a careful study of the record and case law, we find that Camper has not met his burden of proving purposeful discrimination by the State in its use of peremptory strikes. Therefore, the trial court’s rulings were not clearly erroneous or against the weight of the evidence. This issue is without merit.
 

 II. WEIGHT OF THE EVIDENCE
 

 ¶ 19. Camper argues that the verdict is against the overwhelming weight of the evidence. “[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844(¶ 18) (Miss.2005) (citing
 
 Herring v. State,
 
 691 So.2d 948, 957 (Miss.1997)). This Court sits as a hypothetical “thirteenth juror.”
 
 Id.
 
 We weigh the evidence in the light most favorable to the verdict.
 
 Id.
 
 If we disagree with the verdict of the jury, a new trial must be granted.
 
 Id.
 

 ¶20. Camper claims that “the witnesses whose testimony provided the evidence necessary to convict Camper was remarkably suspect and incredible.” Camper first attacks the testimony of Edwards. Edwards testified that Camper had a pistol on the day in question, and that Camper shot him with it. Edwards further testified that he did not have a pistol. Camper points out that Edwards admitted that he had previously testified in a criminal trial which resulted in a conviction and that he later recanted his testimony, signing an affidavit stating that his previous testimony was false. In other words, Edwards admitted to giving dishonest testimony at trial at least once before. Edwards’s previous false statement was brought before the jury during Camper’s cross-examination of Edwards.
 

 ¶ 21. Next, Camper attacks the testimony of Rose, claiming that Deputy Gun-ter’s testimony rebuts Rose’s testimony. Rose testified that she did not see a pistol during the incident, on either Camper or Edwards, and that she did not give a statement to Deputy Gunter. However, Deputy Gunter later testified that he had
 
 *1077
 
 taken a statement from Rose in which she stated that she saw a pistol in Edwards’s waistband, and he stated that she told him that Camper used Edwards’s pistol to shoot Edwards.
 

 ¶ 22. We have long held that the jury is the sole judge of witnesses’ credibility.
 
 Gathright v. State,
 
 380 So.2d 1276, 1278 (Miss.1980). “[W]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the [Sjtate’s witnesses and the appellant’s witnesses, including the appellant himself.”
 
 Id.
 

 ¶ 23. “A person is guilty of aggravated assault if he ... attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.” Miss.Code Ann. § 97-3-7(2) (Supp.2009). The State’s proof met the elements of aggravated assault. The State introduced this evidence through the testimony of Deputy Gunter, Edwards, and Dr. Chiem. As previously stated, Camper attempted to rebut the State’s evidence with the testimony of Camper, Rose, and with a second examination of Deputy Gunter. “[T]he credibility of witnesses is not for the reviewing court.”
 
 Id.
 
 The jury in this case was aware of the facts that led the appellant to argue that the testimony was “remarkably suspect and incredible.” Viewed in the light most favorable to the jury’s verdict, the record reflects that the verdict is not against the overwhelming weight of this evidence. This issue is without merit.
 

 CONCLUSION
 

 ¶ 24. We find that Camper’s arguments are without merit for the aforementioned reasons stated. The conviction and sentence are affirmed.
 

 ¶ 25. THE JUDGMENT OF THE SIMPSON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SIMPSON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR.