GRIFFIS, P.J., for the Court:
¶ 1. Steve Antonio Anthony was convicted in the Lauderdale County Circuit Court of the sale of cocaine under Mississippi Code Annotated section 41-29-139 (Supp. 2011). Anthony argues on appeal that: (1) the circuit court erred by excluding a non-party witness’s prior felony charges on cross-examination; (2) the circuit court erred in denying two peremptory challenges raised by the defense; and (3) the jury’s verdict is against the overwhelming weight of the evidence. We find no error and affirm.
FACTS
¶ 2. On December 4, 2009, Anthony was arrested for selling approximately 3.06 grams of cocaine to Arnold Brown, a confidential informant. The drug sale between Anthony and Brown took place on June 29, 2007.
¶ 3. Prior to the drug buy, Brown approached Agent Christopher Scott with the Meridian Police Department and the East Mississippi Task Force about working with the task force as a Cl. Brown contacted an individual known as “Pee Wee” who had cocaine he was willing to sell. Agent Scott began the operation to buy drugs through Brown from Pee Wee based on Brown’s information. Brown called Pee Wee on the orders of Agent Scott and set up a meeting place for the drug buy. Pee Wee agreed to meet Brown oh 16th Avenue and 16th Street in Meridian, Mississippi. Agent Scott testified that he did not record the conversation, but the phone call was made from their briefing location. At the trial, Brown testified that the man he knew as Pee Wee was Anthony.
¶ 4. Before the Cl went to the drug-buy location, the task force searched Brown thoroughly to make sure he did not have any weapons or contraband on him. Brown was then issued money from the official task-force fund. The department made copies of the serial numbers of each bill used in the buy. The task force wired Brown with an audio and video device, and he was wired with a transmitter so the surveillance agents could hear Brown during the buy. Brown’s vehicle was searched in its entirety to make sure that no drugs, contraband, or weapons of any type were present in his vehicle.
¶ 5. After Brown was thoroughly searched and wired, Brown gave the agents the specific route that he was going to take to the buy. Agent Scott testified that the agents tried to do a physical surveillance without being too close in proximity to the buy in order to ensure that Brown’s cover was not blown. Agent Scott further testified that Brown did not *422 make any stops between the pre-buy meeting and the buy location. Brown testified that Anthony told him he had some “soft,” which is powder cocaine. Brown asked Anthony for the price of a gram of cocaine. Anthony told Brown a gram of cocaine was $100.
¶ 6. When Brown and Anthony were at the designated place for the buy, Brown testified that Anthony got in Brown’s car in order to make the exchange. During the exchange, Anthony got out of the vehicle before the close of the buy. Brown then followed Anthony out of the car and approached Anthony about buying some pills in order to get Anthony on video. After the buy, Brown immediately met with the agents who confiscated the cocaine that Brown had bought from Anthony. At the post-buy debriefing, the agents again searched Brown and his car. The agents also took Brown’s statement. The Mississippi Crime Lab determined that substance sold to Brown was 3.06 grams of cocaine.
¶ 7. The jury convicted Anthony on June 2, 2010, for sale of cocaine. Anthony was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2007). The circuit court sentenced Anthony to sixty years in the custody of the Mississippi Department of Corrections without eligibility for probation or parole. Anthony was additionally ordered to pay a $5,000 fine.
ANALYSIS

1. Whether the circuit court erred by excluding a non-party witness’s pri- or felony charges on cross-examination.

¶ 8. Anthony argues the circuit court committed reversible error when it denied him the opportunity to confront Brown about his prior felony charges on cross-examination. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. Wade v. State, 583 So.2d 965, 967 (Miss.1991). This Court “will not reverse the ruling of a circuit judge unless he abused his discretion and caused the accused to experience prejudice.” Pritchett v. State, 32 So.3d 545, 547 (¶ 8) (Miss.Ct.App.2010) (quoting Shearer v. State, 423 So.2d 824, 826 (Miss.1982)). To warrant reversal, an error in an evidentiary ruling by the trial court must have “the effect of denying the defendant a fundamentally fair trial.” Martin v. State, 726 So.2d 1210, 1214 (¶ 13) (Miss.Ct.App.1998).
¶ 9. Anthony sought to introduce: (1) Brown’s arrest for two counts of sale of a controlled substance and one count of contempt of child support from 2007, and (2) Brown’s arrest for one count possession of a controlled substance and one count abuse/neglect/exploitation of a vulnerable adult. Anthony argues that under Mississippi Rule of Evidence 609, the circuit court should have allowed him to cross-examine Brown on all of his prior arrests and convictions, rather than limiting the questions to Brown’s arrest for two counts of sale of a controlled substance in 2007. “The scope of cross-examination, although ordinarily broad, is within the sound judicial discretion of the trial court and such court possesses an inherent power to limit such examination to relevant factual issues.” Dozier v. State, 257 So.2d 857, 859 (Miss.1972).
¶ 10. Rule 609 states, in part, that:
(a) For the purpose of attacking the character for truthfulness of a witness,
(1) evidence that (A) a nonparty witness has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the wit *423 ness was convicted, and (B) a party has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the party; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.
¶ 11. The circuit court did not hinder the Anthony’s ability to present to the jury that Brown was “working-off” charges as a confidential informant. At trial, Anthony asked Brown the following questions:
Q: You certainly have broken the law before.
A: Yes.
Q: Have you ever been convicted of any felonies?
A: Yes.
Q: Mr. Brown, how is it that you became involved with MBN or the Lauderdale County Task Force?
A: I caught a sale — a pill charge.
Q: When you say you “caught a pill charge,” what do you mean?
A: I sold to someone and they — I got caught.
Q: You sold to another informant?
A: Yes, I guess, yes.
Q: Were you told, Hey, you can work this charge off, we can cut you a deal and let you go free or—
A: No. I went to them and asked them could I help myself.
Q: Why did you do that?
A: To keep from going to jail.
Q: And, obviously, you have done it so far?
A: Yes, sir.
Q: Okay. But you also got paid, didn’t you?
A: Yes, sir.
¶ 12. Anthony fully developed, before the jury, that Brown had previous felony convictions and drug charges. Further, Anthony cross-examined Brown about “working-off’ his drug charges by working with the drug task force. The jury heard testimony that Brown had cooperated with the police so he would not go to jail. Through the testimony presented at trial, the jury was made aware that Brown had a motive to work with the police and his previous felonies, specifically his arrest for two counts of sale of controlled substances in 2007.
¶ 13. The additional arrests that Anthony sought to introduce lacked evidence of convictions and relation to the drug task force. Rule 609 states, “evidence that a nonparty witness has been convicted of a crime shall be admitted.” M.R.E. 609(1)(A) (emphasis added). Anthony did not present any evidence to the circuit court that Brown had been convicted of the remaining charges as required by Rule 609. Further, Anthony failed to show the circuit court that the other arrests were related to Brown’s work with the drug task force. The circuit court properly excluded this evidence because an arrest without proof of conviction is inadmissible under Rule 609, and the non-drug related arrests were not relevant. The exclusion of evidence was not an abuse of the circuit court’s discretion.
¶ 14. Anthony also sought to introduce Brown’s conviction from 1993. The circuit court properly excluded the 1993 prior conviction because: (1) it was more than ten years old and not proven to be probative, and (2) Anthony did not provide *424 the State with written notice of his intent to use this conviction. Rule 609(b) states:
Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.
¶ 15. At the time of trial, Brown’s 1993 conviction was seventeen years old; accordingly, his conviction was subject to the time limits of Rule 609(b). Anthony failed to meet both requirements of Rule 609(b). First, Anthony did not provide the State with advance, written notice of his intent to introduce Brown’s 1993 conviction. Second, Anthony did not meet the threshold burden of showing the probative value of Brown’s prior conviction. Ross v. State, 22 So.3d 400, 410 (¶ 32) (Miss.Ct.App.2009).
¶ 16. Anthony’s only argument for the introduction of the 1993 conviction was to show motive and attack the witness’s credibility. If the party seeking to use the “antiquated conviction for impeachment purposes [does not] first demonstrate the probative value of the conviction by showing how the conviction suggests the witness is less than credible,” then “a trial court’s ruling to exclude evidence of a stale conviction will be upheld.” Vickers v. State, 994 So.2d 200, 217 (¶64) (Miss.Ct.App.2008) (internal citation omitted). Anthony failed to show how admitting the 1993 conviction was needed to attack Brown’s credibility. The jury was presented evidence that Brown was operating as a paid confidential informant and had previous felony convictions. Anthony did not state any additional reasons for the introduction of this conviction. Additionally, Anthony did not provide the State notice of his intent to use the seventeen-year-old conviction. This issue has no merit.
¶ 17. We also note, alternatively, that any error by the circuit court would be harmless because Anthony informed the jury that Brown’s motive to assist the police was to work-off his prior charges.

2. Whether the circuit court emd by denying two peremptory challenges raised by the defense.

¶ 18. Anthony argues that the circuit court erred in refusing to grant two peremptory challenges of potential jurors. This Court gives great deference to the trial court’s findings of whether or not a peremptory challenge was race neutral. Manning v. State, 765 So.2d 516, 519 (¶ 8) (Miss.2000). “Indeed, we will not overrule a trial court on a Batson ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence.” Thorson v. State, 721 So.2d 590, 593 (Miss.1998).
¶ 19. During voir dire, Anthony attempted to strike three jurors, and the State objected on the basis that all the strikes were against white jurors. The circuit court reviewed the three peremptory challenges. Anthony offered a list of race-neutral reasons for each strike. The following exchange took place:
Defense: D-l would be Number 2.
Court: All right.
Defense: D-2 is Number 8; and I would strike Number 17, D-3.
*425 Court: All right. Three other acceptable jurors....
Prosecutor: Judge, the first thing I object to is his use of strikes. Those three strikes are all white individuals. I understand what he just said about Mr. May, Juror Number 2, but Mr. May answered no questions; Juror Number 8 answered no questions; Juror 17 answered no questions.
Defense: Maybe Mr. May didn’t answer any questions because he was sleeping. I didn’t want to wake him.
Court: What is the reason that you feel like Ms. Amy Mars is an inappropriate juror?
Defense: I don’t think she is acceptable for a drug case, Your Honor.
Court: What causes you to feel like that?
Defense: I have got to explain why I would cut a white female from a drug ease that didn’t answer any questions?
Court: I guess, yes, sir.
Defense: I didn’t like the color of her dress, Your Honor. It is my strike that Mr. Anthony and I have a right to make.
Prosecutor: If I may, I raise a reverse Batson objection because he exercised all of these strikes on white individuals, none of which had made any statement whatsoever during the trial. He may have a right to make strikes preemptively; however, he does not have the right to strike individuals from the jury panel on the basis of race or sex.
Prosecutor: I think it is clear, Judge, from the responses that [defense counsel] has given, first was he just didn’t think she would be an appropriate juror. If that is the case, Judge, then Batson has no meaning at all because anytime that — any attorney wanted to strike somebody, they would simply have to say, well, I don’t think that’s an appropriate juror. And then, the flippant comment that, I don’t like the color of her dress. I’m just curious to know if he knows what color of the dress she is wearing.
Court: The situation is, it is a serious issue, [defense counsel], when either the State or defense is striking jurors based on race issues. And when you strike only white jurors, then there becomes, I think, certainly a possibility of a Batson violation there because you are striking jurors because of their race. And that’s why I asked, is there a race neutral reason?
Defense: I think there are persons later in the jury pool who gave answers that I believe to be more suitable for trial.
Prosecutor: That’s an unacceptable reason, Judge.
Court: I agree with [the prosecutor]. Unless you can give me other than I would prefer to have someone else in the jury pool or I didn’t like the color of her dress than [sic] I will not allow you to use D-2.
Defense: I think that there are more appropriate jurors for the defense further down the line, Your Honor.
Court: All right. Then, on D-l, which you exercised against Mr. May I will allow that.
Court: As to the strikes on Ms. Mars and Mr. Gordon, I sustain the Batson objection there [sic] by the State; so they will remain on the panel.
*426 ¶ 20. The United States Supreme Court established a three-part test for a party to make out a prima facie case of purposeful discrimination in jury selection. Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The objecting party must show that:
(a) he is a member of a cognizable racial group;
(b) the non-objecting party exercised peremptory challenges to remove venire members of the defendant’s race; and
(c) these facts and any other relevant circumstances raise an inference that the non-objecting party used that practice to exclude the venire men from the petit jury on account of their race.
See id. at 96,106 S.Ct. 1712.
¶21. Once the objecting party does so, the non-objecting party is then required to provide a race-neutral reason for exercising the challenge. Id. at 97,106 S.Ct. 1712. The court may accept the reasons given and allow the challenge. Whether an objecting party has presented a prima facie case is a determination of fact, and the trial judge is afforded great discretion in evaluating whether the objecting party has met this burden. Thorson, 721 So.2d at 593 (¶ 4). However, once a party “has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.” Chamberlin v. State, 989 So.2d 320, 339 (¶ 66) (Miss.2008) (citation omitted).
¶ 22. The State made a prima facie case that the peremptory challenges were based on race, as all three strikes were made against members of the same race. The circuit court found that the reasons for two peremptory challenges offered by defense counsel were not race neutral. The race-neutral reasons offered included not liking the color of one juror’s dress and potential better jurors further down the line. This Court gives great deference to a trial court’s finding of whether or not a peremptory challenge was race-neutral. Manning, 765 So.2d at 519 (¶ 8). Here, we find that the circuit court did not err by finding that the defense used peremptory challenges to strike jurors based on their race. The evidence from the record supports the circuit court’s ruling. This issue is without merit.

3. Whether the verdict is against the overwhelming weight of the evidence.

¶ 23. Finally, Anthony argues that the jury’s verdict is against the overwhelming weight of the evidence. Specifically, he argues that the only direct evidence tying him to the crime was Brown’s testimony. He further argues that a paid confidential informant is an inherently unreliable witness, and a paid confidential informant’s testimony should not suffice for conviction.
¶ 24. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 845 (¶18) (Miss.2005). The evidence is weighed in the light most favorable to the verdict. Id. “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000)). If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a *427 new trial. Id. “This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible.” Langston v. State, 791 So.2d 273, 280 (¶ 14) (Miss.Ct.App.2001).
¶ 25. Anthony’s argument that the testimony of a paid confidential informant cannot sustain a conviction is not supported by Mississippi law. In Boles v. State, 744 So.2d 349 (Miss.Ct.App.1999), this Court affirmed the defendant’s conviction, which was obtained in large part due to the testimony of a paid confidential informant. We stated:
The fact that the confidential informant was being paid for his services is certainly a matter that the jury may consider in weighing what credibility to assign to the informant’s testimony, but that fact does not necessarily render the informant’s testimony inherently unbelievable .... The jurors, sitting as finders of fact, are charged with the responsibility of listening to all the evidence, including impeachment evidence that might affect a particular witness’s credibility, and then determining what weight and worth to assign to the evidence. McClain v. State, 625 So.2d 774, 781 (Miss.1993).
Id. at 351 (¶ 8). Here, the fact that Brown was a paid informant “working-off’ a charge was revealed through Brown’s testimony and the testimony of the two agents. The jury was fully aware that Brown was a confidential informant for the agents. In spite of this fact, the jury chose to find Brown’s testimony to be reliable. This Court is not persuaded that it should disturb the jury’s factual findings.
¶ 26. We do not find that the verdict is against the overwhelming weight of the evidence. This issue is without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF SIXTY YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION AND TO PAY A FINE $5000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDER-DALE COUNTY.
LEE, C.J., IRVING, P.J., BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ISHEE, J. FAIR, J., NOT PARTICIPATING.