# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00379-COA

**BOBBY LEE ALLEN A/K/A BOBBY LEE**               **APPELLANT**
**ALLEN, JR. A/K/A BOBBY ALLEN A/K/A**
**BOBBY ALLEN, JR.**

v.

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/02/2013 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, ARMED ROBBERY, AND SENTENCED TO FORTY YEARS; COUNT II, ACCESSORY AFTER THE FACT TO MURDER, AND SENTENCED TO TWENTY YEARS; AND COUNT III, CONSPIRACY TO COMMIT ARMED ROBBERY, AND SENTENCED TO FIVE YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 06/06/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., FAIR AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    In this appeal, Bobby Lee Allen asserts that the Madison County Circuit Court erred

when it sustained the State's objections to his peremptory strikes of two potential jurors. He also challenges the sufficiency of evidence to convict him of armed robbery and conspiracy to commit armed robbery. Upon review, we find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2. On April 30, 2012, Allen and two other males drove to an apartment complex in Ridgeland, Mississippi. Allen, the driver of the vehicle, waited in the car as the other two men robbed and shot Jose Gurrola Ortiz. When the men returned to the vehicle, Allen drove away from the scene. Allen was indicted for armed robbery, accessory after the fact to murder, and conspiracy to commit armed robbery, in violation of Mississippi Code Annotated sections 97-3-79, 97-1-5, and 97-1-1 (Rev. 2014).

¶3. During the investigation phase, Allen provided multiple statements to the detectives. He confessed to driving the men to the location, and he admitted that he heard the gunshot. But Allen claimed to have no prior knowledge of the robbery plot. He told investigators that one of the men offered him gas money in exchange for a ride to a girl's home. Allen provided specific details about the crimes and admitted that he split the money with the men. Allen was arrested after he provided his final statement.

¶4. During jury-selection proceedings, the State challenged Allen's six peremptory strikes against Caucasian males. The State claimed the strikes were racially motivated and improperly based on gender. Allen took issue with two jurors in particular and argued that both of the potential jurors displayed disinterested mannerisms or body language. The circuit judge found that Allen's explanations were insufficient and neither race- nor gender-neutral.

2

¶5. After a two-day trial, Allen was convicted on all counts. On May 2, 2013, he was sentenced to concurrent sentences of forty years. On appeal, counsel for Allen argues that the circuit court erred when it overruled the peremptory strikes. Allen, in a supplemental pro se brief, argues that the evidence was insufficient to convict him of Count I, armed robbery, and Count III, conspiracy to commit armed robbery. Allen does not appeal the sufficiency of the evidence as to Count II, accessory after the fact to murder.

ANALYSIS

*I.* Batson *Challenge*

¶6. Allen argues that the circuit court erred when it overruled his peremptory strikes as race- and gender-biased. He challenges the circuit court's determination that body language is not a neutral justification. Allen asserts that the Mississippi Supreme Court has recognized that body language and demeanor are in fact race- and gender-neutral reasons to exercise a peremptory strike. Allen further contends that he justified the strikes when he explained that both men appeared disinterested and predisposed to the notion that he was guilty. Finally, Allen concludes that the trial court's decision was erroneous because the record provides no evidence of inherent discrimination. Thus, he claims he is entitled to a new trial on all counts of conviction.

¶7. "The trial judge acts as finder of fact when a *Batson* issue arises." *Avant v. State*, 910 So. 2d 695, 698 (¶11) (Miss. Ct. App. 2005) (citation omitted). "This Court gives great deference to the trial court's findings of whether or not a peremptory challenge was race-neutral." *Anthony v. State*, 108 So. 3d 419, 424 (¶18) (Miss. Ct. App. 2012) (reversed on

other grounds).  "[W]e will not overrule a trial court on a *Batson* ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence." *Id.*

¶8.    During voir dire, Allen attempted to strike six jurors, and the State objected on the basis that all of the strikes were against Caucasian males.  The circuit court reviewed the peremptory challenges and asked Allen to provide race- and gender-neutral reasons for the strikes.  Allen offered several reasons, and the State conceded four of the strikes.  For the remaining two potential jurors, the following exchange took place:

| | |
|---|---|
| Court: | So it does appear that all six of the challenges exercised by the Defense was against white males.  There was one white male that was accepted.  However, . . . I do think that that shows a pattern in that all of the six challenges were utilized against white males so that I will ask the Defense to give me a race-neutral reason for the strike as to Juror Number 3. |
| . . . . | |
| Defense: | Your Honor, I believe it was this particular one that was more or less the mannerism and just that individual just showed a general disinterest in what was going on, in my opinion. |
| Court: | What says the State? |
| Prosecutor: | Your Honor, we would say that it requires more than that.  Under the case law, under body language, you know, under *Canon*, it's arms folded; under *Manning*, it's arms folded; under *Walters*, rolled eyes.  I'm not seeing anything here under just general mannerism. . . . |
| Court: | What says the Defense? |
| . . . . | |
| Defense: | Your Honor, I would say that . . . his mannerisms w[ere] beyond |

4

what I would consider to be normal. He did appear to be disinterested as if his mind were already made up. . . .

Court:      I did not see a single response that he made to any of the questions. . . . As I'm sitting here, I saw nothing that would draw my attention to Mr. Keeton. He answered no questions so I find that the explanation given by the Defense is insufficient for a race-neutral reason so Mr. Keeton will go on the jury as Juror Number 7.

. . . .

Court:      Number 9, Mr. Thomas, what's your race- and gender-neutral reason for striking Mr. Thomas?

Defense:      Again, your Honor, I believe it was body language[.]

Court:      What says the State?

Prosecutor:      Your Honor, my notes reflect that Juror 9 did not open his mouth and I do not indicate anything that would show that he had made his mind up or ha[d] a predisposition; and as such, pursuant to the case law, I think that this is [pretextual].

Court:      What says the Defense?

Defense:      I have nothing in response, Your Honor.

Court:      All right. As I'm sitting here watching the venire, there was certainly nothing about Number 9 that caused my attention to be drawn to him. I find that the explanation given is not sufficient and I find that the strike is [pretextual] and so Juror Number 9 will be placed on the jury as Juror Number 8.

¶9. "The United States Supreme Court established a three-part test for a party to make out a prima facie case of purposeful discrimination in jury selection." *Anthony*, 108 So. 3d at 426 (¶20) (citing *Batson v. Kentucky*, 476 U.S. 79, 96 (1986)). "The objecting party must show":

5

(a) he is a member of a cognizable racial group;

(b) the non-objecting party exercised peremptory challenges to remove venire members [of a different race from the defendant]; and

(c) these facts and any other relevant circumstances raise an inference that the non-objecting party used that practice to exclude the venire [members] from the petit jury on account of their race.

*Id.*

¶10.    "After a prima facie case has been made, the party exercising the challenge has the burden to articulate a race-neutral explanation for excluding the potential juror." *Flowers v. State*, 144 So. 3d 188, 196-97 (¶29) (Miss. Ct. App. 2014) (citation omitted). "As long as discriminatory intent is not inherent in the explanation given by the [defendant], 'the reason offered will be deemed race[-]neutral.'" *Id.* at 197 (¶11) (citation omitted). Next, "the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory [strike], i.e., that the reason given was a pretext for discrimination." *Id.* (citation and quotation marks omitted).

¶11.    Here, the record reveals that Allen used his six strikes to dismiss Caucasian males from the venire. After the State's *Batson*[1] challenge, the circuit judge asked Allen to provide neutral reasons for each strike. During the process, the State conceded four of the dismissals. Allen, who is African American, claimed that the remaining two potential jurors each

_____

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986), is commonly referred to as *Batson* or as the concept of a *Batson* challenge. The holding in this United States Supreme Court case sets out the test for determining if a peremptory strike is racially discriminatory. In *Batson*, the court found that the Equal Protection Clause forbids a party from challenging potential jurors solely on account of race or the assumption that a particular race of people, as a whole, will be unable to impartially consider the State's case against a defendant.

exhibited disinterested mannerisms and appeared as though they had already determined his guilt. The State countered that Allen's explanations were insufficient because he failed to describe specific body language that suggested the men were disinterested. When given the opportunity to further elaborate, Allen offered no response.

¶12. The circuit judge pointed out that neither Juror 3 nor Juror 9 had answered any questions during voir dire. The judge further noted that he had personally kept watch, and he saw nothing that drew his attention to either of the men. The circuit judge ultimately determined that Allen's strikes were pretextual in nature and placed both of the men on the jury.

¶13. At trial, Allen failed to detail specific body language to indicate the jurors appeared disinterested. But now he cites to several supreme court cases to support the contention that body language and demeanor are in fact recognized as race- and gender-neutral reasons for a peremptory strike. Allen claims that "a nonexhaustive list" of supreme court cases have found that demeanor is a neutral justification. However, of the four cases that he relies on, all of the challenges were based on specific behaviors, and the trial courts recognized each explanation as neutral.

¶14. For example, Allen erroneously relies on *Lockett v. State*, 517 So. 2d 1346, 1356-57 (Miss. 1987), which, in its appendix, provides a detailed listing of various reasons that have been accepted as neutral by other state courts. Allen fails to recognize that the supreme court merely cited to these cases to support its determination that the prosecution provided legitimate reasons for striking jurors. As set out in the facts of *Lockett*, the trial court

sustained the prosecution's strike of a juror who wore a hat into the courtroom because this behavior appeared contemptuous of the proceedings. *Id.* at 1351-52. Likewise, another potential juror in *Lockett* rolled her eyes and became unresponsive to the voir dire after she was denied excusal from the jury pool. *Id.* at 1351. Consequently, the trial court determined that the potential juror's posture and demeanor appeared hostile and were legitimate concerns for the prosecution. *Id.*

¶15. In the remaining cases cited by Allen, he fails to reference specific language upon which he relies for each case. As such, the cases cited provide little support for his argument that the supreme court recognizes demeanor, generally, as a neutral reason. Allen cites *Lynch v. State*, 877 So. 2d 1254 (Miss. 2004), but this case does not add much support to his position. In *Lynch*, each of the peremptory challenges was based on actual responses and the prosecutor's belief that several of the jurors appeared anxious to be excused from jury duty. *Id.* The instant case is distinct because neither Juror 3 nor Juror 9 responded to voir dire, nor was either juror alleged to have been anxious to get off the jury.

¶16. Allen also relies on *Davis v. State*, 660 So. 2d 1228, 1242 (Miss. 1995), but he cites this case to return the Court's attention to the list provided in *Lockett*. Mere reference to the word "demeanor" in a supreme court opinion without more of an explanation of the specific demeanor is not enough to sustain a peremptory strike as race-neutral. Further, of the prosecution's nine peremptory strikes, in *Davis*, none were predicated on body language alone. *Id.* at 1240-42. The facts in *Davis* are distinct from the instant case. The prosecution provided extensive justification for each of its strikes, and the trial court sustained each

reason. *Id.* We would apply the same analysis provided above for *Davis* to Allen's use of *Hardison v. State,* 94 So. 3d 1092 (Miss. 2012), which he also relies on to support his argument that demeanor alone is a sufficient race-neutral justification.

¶17. Finally, in reliance on *Randall v. State*, 716 So. 2d 584, 588 (¶16) (Miss. 1998), Allen asserts that "any reason which does not facially violate the Constitution is sufficient." Further, he adds that "a strike does not have to be persuasive or even plausible." *Id.* Allen further contends that the record is void of any inherent discriminatory intent toward Jurors 3 and 9. *Id.*

¶18. Here, Allen misinterprets the court's intent when he relies solely on this passage from the opinion. In this portion of *Randall*, the supreme court simply laid out the steps to be taken by a trial court when analyzing a *Batson* challenge of a peremptory strike. In fact, this Court has held that "a facially race-neutral explanation for a peremptory challenge should never be sufficient, standing alone, to meet a *Batson* objection." *Dubose v. State*, 22 So. 3d 340, 347-48 (¶17) (Miss. Ct. App. 2009). Rather, "[a] *Batson* [challenge] requires more." *Id.* Under *Batson*, "the trial judge [must] determine whether the facially race-neutral reason is in fact a pretext for purposeful discrimination: a 'smoke-screen,' if you will." *Id.* When challenged, Allen provided no explanations to disprove the State's argument that he sought to rid the jury of Caucasian males. Unlike the previously discussed cases, in the instant case, neither of the jurors spoke nor exhibited specific mannerisms that raised concern.

¶19. While the supreme court has recognized that "demeanor is a legitimate reason . . . to exercise a peremptory challenge," here, the challenging party failed to articulate specific

9

mannerisms or demeanors for the peremptory strikes. *Lockett*, 517 So. 2d at 1352. The circuit judge made specific findings based on his own observations as well as the assertions of each party. Allen failed to elaborate on the mannerisms or body language that caused him concern. Moreover, the circuit judge personally noted that neither of the jurors drew his attention. Without more of an explanation from Allen, the circuit judge determined there was in fact a pattern of strikes against Caucasian males only.

¶20. This Court gives great deference to a trial court's finding of whether or not a peremptory challenge was race-neutral. Here, we find that the circuit court did not err when it found that Allen's explanations were neither race- nor gender-neutral. The evidence in the record supports the circuit judge's finding that the strikes were discriminatory and pretextual. The circuit court's ruling was not clearly erroneous. This issue is without merit.

   *II.     Sufficiency of the Evidence*

¶21. Allen contends there was insufficient evidence to convict him of armed robbery and conspiracy to commit armed robbery. He argues that the State failed to prove each element of the crimes. He contends there was plain error because the evidence did not show that he conspired to commit the unlawful act of armed robbery. Allen argues that the State failed to prove that an agreement existed between him and the other two men involved in the armed robbery.

¶22. "On review of the sufficiency of the evidence, 'the critical inquiry is whether the evidence shows []beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and

10

where the evidence fails to meet this test it is insufficient to support a conviction.'" *Dorsey v. State*, 986 So. 2d 1080, 1085 (¶15) (Miss. Ct. App. 2008) (citing *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). The question is not "whether we believe the evidence showed guilt beyond a reasonable doubt." *Id.* Rather, our inquiry is based on consideration of "the evidence in the light most favorable to the verdict." *Id.* We must ask ourselves if "a rational trier of fact could have found each essential element of the crime beyond a reasonable doubt." *Id.* (citation omitted). If "the facts and inferences . . . point in favor of the defendant[,] on any element of the offense[,] with sufficient force that no reasonable juror could have found guilt beyond a reasonable doubt, then we must reverse and render." *Id.* (citation omitted).

¶23. To obtain a conviction for conspiracy to commit armed robbery, the State was required to prove that Allen along with "two (2) or more persons . . . conspire[d] . . . to commit [the] crime [of armed robbery]." Miss. Code Ann. § 97-1-1. To prove the underlying crime of armed robbery, the State was also required to prove, beyond a reasonable doubt, that Allen "feloniously [took] or attempt[ed] to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon." Miss. Code Ann. § 97-3-79.

¶24. In his supplemental pro se brief, Allen claims that he had no deliberate intent to commit any crime. He asserts that he had no prior knowledge of the other men's plan to commit a robbery. He contends that his agreement to provide transportation in exchange for

11

gas money falls short of conspiring to engage in an armed robbery. Further, he argues that the conviction was received in error because the State failed to prove that he agreed to accomplish some unlawful purpose. Allen offers this lack of awareness as proof that he never entered into an agreement to commit the armed robbery.

¶25. Allen claims that his ignorance of the robbery plot is undisputed. However, this claim is contrary to the evidence presented at trial. Weighing the evidence in the light most favorable to the verdict, Allen's own confessions, accompanied by the investigator's corroborating testimony, established that Allen conspired to commit armed robbery. Therefore, Allen, as a coconspirator, was also guilty of armed robbery.

¶26. Allen's recorded statements were played for the jury, and several of the detectives testified on behalf of the State. Allen told detectives that he drove around until the gunman instructed him to stop the vehicle and back into a parking spot. He also admitted that he became aware of the plan to commit armed robbery before the act took place.

¶27. Allen placed himself at the scene, and he was present when the victim was selected as the target for the armed robbery. He provided a precise description of the victim's vehicle and also knew that the driver was of Mexican descent. Allen told investigators that he sat in the car, and played on his cell phone while the men executed the robbery. He admitted that he heard the gunshot, and he waited on the men to return to the car before he drove away. Allen also confessed that he and the other men split the money that was taken from the victim. "We do not find that the evidence so heavily preponderates against the verdict that to allow the verdict to stand would permit an unconscionable injustice." *Dorsey*, 986

12

So. 2d at 1087 (¶21).  We affirm.

¶28.  **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF FORTY YEARS; COUNT II, ACCESSORY AFTER THE FACT TO MURDER, AND SENTENCE OF TWENTY YEARS; AND COUNT III, CONSPIRACY TO COMMIT ARMED ROBBERY, AND SENTENCE OF FIVE YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.**

**LEE, C.J., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.  WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.**

**WESTBROOKS, J., DISSENTING:**

¶29.  I find that the trial court erred when it overruled Allen's peremptory strikes of two potential jurors.  Because I believe the proffered reasons were race- and gender-neutral, I respectfully dissent.

¶30.  Allen's counsel used peremptory strikes on six white males.  The prosecutor objected and requested that Allen's counsel be required to give race- and gender-neutral reasons for the strikes.  The court found that Allen's counsel provided race- and gender-neutral reasons for four of the peremptory strikes.  For the remaining two jurors, the following exchange took place:

> THE COURT: So it does appear that all six of the challenges exercised by the Defense was against white males.  There was one white male that was accepted.  However, . . . . I do think that shows a pattern in that all of the six challenges were utilized against white males so that I will ask the Defense to give me a neutral reason for the strike as to Juror Number 3.
>
> . . . .
>
> THE COURT:  All right.  What says the Defense to the race gender reason

13

[sic] for exercising D1?

MR. DIXON (ALLEN'S COUNSEL): Your Honor, I believe it was this particular one that was more or less the mannerism and just that individual just showed a general disinterest in what was going on, in my opinion.

. . . .

THE COURT: Number 9, Mr. Thomas, what's your race and gender neutral reason for striking Mr. Thomas?

MR. DIXON: Again, your Honor, I believe it was the body language[.]

¶31. The trial court found that Allen's answers were pretextual in nature. I disagree. "Our supreme court has set out a non-exhaustive list of valid race-neutral reasons for the exercise of peremptory challenges[.]" *Perry v. State*, 949 So. 2d 764, 767-68 (¶7) (Miss. Ct. App. 2006). This list "includes living in a 'high crime' area, body language, demeanor, distrust of a juror by the party exercising the strike, inconsistency between oral responses and juror's card, criminal history of juror or relative, social work and other types of employment, and religious beliefs." *Id*; *see also Walker v. State*, 815 So. 2d 1209, 1215 (¶12) (Miss. 2002) (citing *Lockett v. State*, 517 So. 2d 1346, 1356-57 (Miss. 1987)).

¶32. Also, a white-male juror had been accepted in the jury box before the prosecution made a challenge to Allen's peremptory strikes. "When considering a *Batson* objection, the trial court should consider the racial composition of the entire venire panel, the jurors considered for service, and the jurors and alternates who actually served." *Camper v. State*, 24 So. 3d 1072, 1076 (¶17) (Miss. Ct. App. 2010). In *Camper*, a juror was excluded for looking "disinterested" and had her hands crossed during the void dire procedure. *Id*. at (¶15). "The trial court made its factual finding concerning [the juror] by holding that bad

body language was an acceptable race/gender neutral reason." *Id*. This Court further found that "it was not error for the [trial] judge to accept the . . . reason, because body language has been accepted by the Mississippi Supreme Court as a race-neutral reason for the exercise of a peremptory strike." *Id*.

¶33.    Allen's counsel argued that the witnesses looked disinterested and exhibited body language and mannerisms that exhibited that their minds had already been made up regarding the case. Accordingly, I find these reasons to be race- and gender-neutral.

¶34.    The majority asserts that specific body language needs to be specified in giving a race- and gender-neutral reason for striking a potential juror, and cites the appendix in *Lockett*, 517 So. 2d at 1356-57, which provides a listing of various reasons that have been accepted as neutral by other state courts. Maj. Op. at (¶¶13-14). The majority holds that Allen erroneously relies on *Lockett*; however, "demeanor" and "lack of eye contact and attentiveness" are listed as neutral reasons. *Lockett*, 517 So. 2d at 1356. Therefore, I would find that Allen's reasons for using the peremptory strikes on Jurors 3 and 9 were race- and gender-neutral.

¶35.    I respectfully dissent, and I would reverse and remand this case for a new trial.

**IRVING, P.J., JOINS THIS OPINION.**