CARLTON, J.,
for the Court:
¶ 1. After a trial held on December 12, 2011, a Rankin County jury convicted Kenneth Flowers of two counts of armed robbery. The trial judge sentenced Flowers to serve twenty-six years in the custody of the Mississippi Department of Corrections (MDOC) on each count, with the sentences to run concurrently. Flowers appeals his conviction and sentence. Finding no error, we affirm.
FACTS
¶ 2. On the night of September 18, 2008, an armed robbery occurred at the Super D Drug Store on Highway 80 in Pearl, Mississippi. Two men wearing masks entered the store and rushed to the pharmacy in the back part of the store. One man carried an automatic pistol. The masked men ordered the pharmacist and another employee to place the store’s cash and narcotics into plastic bags that the men brought with them into the store.
¶ 3. After the masked men entered the store, one Super D employee, Eli McMillan, managed to slip out of the front door unnoticed. While leaving the store, McMillan observed a dark-colored pickup truck parked in front of the store, with the engine running. McMillan called 911. Af-terwards, McMillan witnessed the pickup truck drive away, but stated that he could not see the driver nor the occupants of the truck.
¶ 4. Officer Nick McLendon of the Pearl Police Department received a dispatch call and arrived at the Super D while the two masked men were still in the store. When other officers arrived, they surrounded the Super D. The two men tried to escape through the ceiling, but failed. The two men eventually exited the store peacefully and were arrested. The two men were identified as George Jones and Antwaine Jones.[1] In George’s and Antwaine’s possession, police found a damaged 9mm automatic pistol, wads of paper currency, two masks, and a single glove.
¶ 5. During the robbery, Edy Muse was dining at the China Buffet restaurant, several stores away from the Super D. She noticed a man drive up in a dark pickup truck, park the truck, leave the lights on, and walk quickly toward the door of the restaurant. Muse testified that the man *192 did not enter the restaurant, and did not return to the truck. Muse also testified that when she exited the restaurant, she saw the commotion at the Super D and informed police officers at the scene of the suspicious pickup.
¶ 6. The police officers recovered the truck from the China Buffet parking lot. No usable fingerprints or other evidence was recovered from the truck. McMillan identified a photograph of a GMC pickup as being similar to the truck he saw in front of Super D during the time of the robbery.
¶ 7. Upon questioning, George and Ant-waine eventually admitted to participating in the robbery with a man named “K,” whom they identified as the getaway driver and lookout. The Pearl Police Department received information from an FBI task force that the man identified as “K” was possibly Flowers. Police officers took two separate photo lineups to George and Antwaine, who were shown the photo lineups separately, and both identified Flowers as “K.”
¶8. George, Antwaine, and Flowers were indicted on two counts of armed robbery pursuant to Mississippi Code Annotated section 97-3-79 (Rev.2006). George and Antwaine both pled guilty to the charge of armed robbery, and were each sentenced to serve fifteen years in the custody of the MDOC, with seven years suspended.
¶ 9. At Flowers’s trial, both George and Antwaine testified against Flowers. George explained that he made no agreement with the State in return for testifying against Flowers. At trial, George admitted to using the damaged pistol, and he named Antwaine and Flowers as the other participants in the robbery. George stated that all three men planned the robbery, and that Flowers was supposed to drive him and Antwaine and serve as a lookout. George explained that Flowers drove him and Antwaine to Super D, but that Flowers left the scene.
¶ 10. George further testified that after pleading guilty, he informed the district attorney’s office that he would not testify against Flowers. George alleged that he was told by the district attorney’s office that if he failed to testify, his “sentence would be withdrawn.” George stated that testifying against Flowers was not part of the original plea agreement.
¶ 11. Antwaine also testified that Flowers planned the robbery. Like George, Antwaine made allegations that the district attorney’s office told him that if he did not testify, the State would “take his sentence back and start all over” by going to trial.
¶ 12. Flowers presented two alibi witnesses, Jennifer Wilder, a former girlfriend, and Amos Flowers, his father. Wilder testified that she used to date Flowers, and they have a young daughter together. Wilder testified that on September 18, 2008, the day of the robbery, she asked Flowers to watch their daughter at his parents’ house from 6:00 p.m. until 9:00 p.m. Wilder stated that she dropped their daughter off in West Jackson at 6:30 p.m. She confirmed that Flowers and both of his parents were present at the house. Around 9:00 p.m., Wilder called Flowers and apologized for being late to pick up their daughter. She also testified that around that same time, she saw a news report about the robbery at Super D.
¶ 13. Amos testified that on September 18, 2008, he and his wife were at home, and Flowers arrived at their home around 5:00 p.m. After Wilder dropped off the child, Amos stated that he and his wife went to a casino in Vicksburg around 7:00 p.m., leaving Flowers home with the child. Amos testified that Flowers surrendered himself to authorities in September 2010. *193 Amos stated that he told police and sent a letter to the attorney general’s office advising that Flowers had been at home between 5:00 p.m. and 7:00 p.m. on September 18, 2008.
¶ 14. The State provided rebuttal testimony from U.S. Marshall Ronnie Odom, who testified that on September 3, 2010, Flowers ran away when Marshall Odom, and other officers tried to execute an arrest warrant on him. Marshall Odom refuted Amos’s allegation that Flowers turned himself in to police; instead, Marshall Odom stated that police officers found Flowers at Attorney Ermea J. Russell’s office after receiving a phone call that Flowers was at the office.
¶ 15. The jury convicted Flowers of two counts of armed robbery, and the trial court sentenced him on each count to twenty-six years in the custody of the MDOC, with the sentences to run concurrently. Flowers filed a motion for a judgment notwithstanding the verdict, or in the alternative, a new trial, which the trial judge denied. Flowers now appeals, raising the following as error: the trial court gave an improper peremptory instruction on the use of a deadly weapon as an element of armed robbery; the weight of the evidence fails to support the verdict; and his convictions were secured with coerced testimony. Flowers filed a pro se supplemental brief, further alleging that he was denied the right to confront his primary accusers, by the use of a photo lineup prepared by FBI agents; that two African Americans were improperly stricken from the jury; and that his counsel was ineffective. Flowers’s assignments of errors address both the weight and sufficiency of the evidence supporting the verdict and conviction. Flowers’s appellate counsel raises assignments of error, and Flowers also raises his own supplemental assignments of error. This opinion addresses the alleged errors raised by both Flowers and his counsel.
STANDARD OF REVIEW
¶ 16. The Mississippi Supreme Court has established that “Ijjury instructions are generally within the discretion of the trial court and the settled standard of review is abuse of discretion.” Bailey v. State, 78 So.3d 308, 315 (¶ 20) (Miss.2012) (citing Newell v. State, 49 So.3d 66, 73 (¶ 20) (Miss.2010)). “The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context.” Id. “When read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found.” Id.
¶ 17. A motion for a new trial goes to the weight of the evidence. Woodard v. State, 765 So.2d 573, 576 (¶ 16) (Miss.Ct. App.2000). When determining whether the verdict was against the overwhelming weight of the evidence, this Court will view all evidence in the light most favorable to the jury verdict, and we will not overturn the verdict unless we find that the trial court abused its discretion when it denied the motion for a new trial. Id. (citations omitted). “[T]he decision of whether or not to grant a motion for a new trial rests in the sound discretion of the trial judge,” and the motion “should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion would result in an unconscionable injustice.” Id.
DISCUSSION

1. Jury Instruction

¶ 18. Flowers argues that the trial court gave an improper jury instruction regarding the use of a deadly weapon as a statutory element of armed robbery. Mis *194 sissippi Code Annotated section 97-3-79 provides in pertinent part:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury[.]
(Emphasis added).
¶ 19. Flowers specifically asserts that the trial court erred in giving instruction S-8, which instructed the jury that “a pistol or firearm is a deadly weapon without further proof that it is loaded or presently capable of committing a violent injury.” Flowers argues that the “deadly weapon” in this case was a “beat up old gun” with the trigger guard missing. Flowers asserts in his brief that whether or not the gun was operable or could be readily made operable was never determined or proven. Flowers submits that a question of fact therefore exists regarding the element of exhibition of a deadly weapon under section 97-3-79; and he states that the question of whether the gun at issue constituted a deadly weapon should have been left to the jury to decide.
¶ 20. In addressing this issue, we acknowledge that our supreme court’s precedent holds that “[j]ury instructions are generally within the discretion of the trial court[,] and the settled standard of review is abuse of discretion.” Bailey, 78 So.3d at 315 (¶ 20) (citing Newell, 49 So.3d at 73 (¶ 20)). We also acknowledge the State’s argument that asserts that instruction S-8 constituted a correct statement of the law and served to instruct the jury on the prosecution’s burden of proof. The State further argues that the condition of the gun used to commit the crime of armed robbery is irrelevant. We agree. See Davis v. State, 530 So.2d 694, 702 (Miss.1988).
¶ 21. The State cites to Dambrell v. State, 903 So.2d 681, 683 (¶ 6) (Miss.2005), where the supreme court held that when a defendant makes an overt act and a reasonable person would believe that a deadly weapon is present, there is no requirement that a victim must actually see the deadly weapon in order to convict pursuant to [section] 97-3-79. Therefore, a victim is not required to have “definite knowledge” of a deadly weapon in the sense that the weapon must actually be seen by the victim’s own eyes.
See also Davis, 530 So.2d at 702 (“A pistol has ... been judicially declared to be a ‘deadly weapon’ without proof that it is loaded or presently capable of committing a violent injury.”); Lyons v. State, 942 So.2d 247, 250 (¶21) (Miss.Ct.App.2006) (upheld an armed-robbery conviction where the defendant produced a note during a robbery stating that he possessed a gun).[2] Our review of relevant case law reflects instruction S-8 properly instructed the jury on the law regarding the use-of-a-deadly-weapon element of section 97-3-79. Flowers’s claim of an error in jury instruction S-8 lacks merit.

2. Jury Verdict

¶ 22. Flowers next argues that the only incriminating evidence presented against him at trial was the testimony of his accomplices, Antwaine and George; and he *195 submits that this evidence “is too weak and unreliable for reasonable jurors to have determined [his] guilt beyond a reasonable doubt.” Flowers cites to Jones v. State, 368 So.2d 1265 (Miss.1979), where the supreme court reversed Jones’s grand-larceny conviction and rendered an acquittal after determining that the conviction was based on unreliable testimony of an accomplice who had negotiated a favorable plea bargain. Flowers argues that since George and Antwaine asserted at trial that they were coerced into testifying against Flowers, then their testimony should have been stricken from the jury’s consideration.
¶ 23. The record reflects that the State presented testimony from eyewitnesses to the crime, McMillan and Muse, as well as accomplices Antwaine and George. Ant-waine and George both identified Flowers as one of the masterminds behind the robbery and explained that Flowers’s role was to serve as getaway driver and lookout. McMillan testified that he observed a dark-colored pickup truck parked in front of the store, with the engine running, but explained that he could not see the driver. Muse testified that during the time of the robbery, she was dining at the China Buffet restaurant several stores away from the Super D. She noticed a man drive up in a dark pickup truck, park the truck, leave the lights on, and walk quickly toward the door of the restaurant. Muse testified that the man did not enter the restaurant, and did not return to the truck. Muse explained that it was dark outside, so she could only identify the man as “black” and of “medium build, if not thin.”
¶ 24. As stated, when determining whether the verdict was against the overwhelming weight of the evidence, we view all evidence in the light most favorable to the jury verdict. See Woodard, 765 So.2d at 576 (¶ 16). We will not overturn the verdict unless we find that the trial court abused its discretion when it denied the motion for a new trial. Id. The State refutes the assertion that George’s and Antwaine’s testimony was coerced, and the State argues that the evidence provides sufficient support for the jury verdict and conviction. The record reflects that the jury heard testimony from Rankin County Investigator Chad Dixon, who testified that he did not tell George and Antwaine that their sentences would or could be vacated if they failed to testify, and that no one in his presence threatened George or Antwaine with resentencing. Flowers cross-examined Antwaine and George, and by doing so, placed their credibility in issue for the jury to determine. The record reflects that the trial court instructed the jury, in jury instruction 6, that “the uncorroborated testimony of an accomplice is to be considered and weighed with great care, caution, and suspicion.” With respect to the sufficiency of the evidence, we acknowledge that the jury verdict was supported by the evidence, including the testimony of the two eyewitnesses to the crime as well as George’s and Antwaine’s testimony, which’ remained consistent with the testimony of the eyewitnesses.
¶ 25. In Washington v. State, 645 So.2d 915, 918 (Miss.1994), the Mississippi Supreme Court reiterated:
It is hornbook criminal law that the state must prove each element of the offense. Due [p]rocess requires that the state prove each element of the offense beyond a reasonable doubt. There must be in the record evidence sufficient to establish each element of the crime.
(Internal citations omitted). Here, the State possessed the burden of proving beyond a reasonable doubt all elements of armed robbery as set forth by section 97-3-79. See Downs v. State, 962 So.2d 1255, 1259 (¶ 15) (Miss.2007).
*196 ¶ 26. We recognize that the task of evaluating the credibility of the witnesses is left to the sole province of the jury. Johnson v. State, 642 So.2d 924, 927 (Miss.1994). In determining a witness’s credibility, jurors are allowed latitude in deriving facts from each witness’s assertions, and jurors must determine the value of the conflicting testimony introduced during the trial. See also Burrell v. State, 613 So.2d 1186, 1192 (Miss.1993); Winters v. State, 449 So.2d 766, 771 (Miss.1984); Blackwell v. State, 744 So.2d 359, 364 (¶ 18) (Miss.Ct.App.1999). We find that Flowers’s conviction for armed robbery reflects that the jury deemed George’s and Antwaine’s testimony regarding the facts of the robbery, and the testimony from eyewitnesses McMillan and Muse, to be credible; likewise, the jury failed to And the testimony from alibi witnesses Amos and Wilder credible.

S. Supplemental Issues Raised by Flowers

¶ 27. We now turn to address the arguments raised by Flowers in his supplemental brief. Flowers first asserts that he was denied the right to confront the members of the FBI task force at trial as witnesses against him. The United States Supreme Court has held that “[i]n all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, to be confronted with the witnesses against him.” Lilly v. Virginia, 527 U.S. 116, 123, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). Flowers mistakenly states that “once the Jackson/FBI task force became involved in the case, they were witnesses against [him].” We find nothing in the record to show that the FBI task force agents who prepared the photo lineup raised any accusatory statements used against Flowers in his trial, nor were the agents witnesses at his trial. The record reveals that Flowers fully cross-examined all of the State’s witnesses who testified against him. Therefore, Flowers suffered no denial of his Sixth and Fourteenth Amendment rights to confront his accuser. See Conley v. State, 790 So.2d 773, 789 (¶ 53) (Miss.2001).
¶ 28. Flowers also submits that the trial court erred in denying his Batson claim. Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Flowers claims that he was unfairly tried before an all-white jury. In reviewing an alleged Batson violation, we will not disturb a trial court’s “ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence.” Thorson v. State, 721 So.2d 590, 593 (¶ 4) (Miss.1998). In this case, the record reflects that Flowers failed to challenge or object to the race-neutral reasons provided by the State for exercising its peremptory strikes.
¶ 29. When making a Batson claim, the party who objects to the peremptory strike “must first make a prima facie showing that race was the criteria for the exercise of the peremptory strike.” McFarland v. State, 707 So.2d 166, 171 (¶ 14) (Miss.1997) (citing Batson, 476 U.S. at 96-97,106 S.Ct. 1712). A defendant can establish a prima facie case of discrimination by showing:
(1) [that he] is a member of a cognizable racial group, (2) that the [prosecution] has exercised peremptory challenges to remove from the venire members of the [defendant’s] race, and (3) the facts and circumstances raise an inference that the [prosecution] used [its] peremptory challenge for the purpose of striking minorities.
Wilson v. Strickland, 953 So.2d 306, 312 (¶ 11) (Miss.Ct.App.2007). After a prima facie case has been made, the party exer- *197 rising the challenge has the burden to articulate a race-neutral explanation for excluding the potential juror. McFarland, 707 So.2d at 171 (¶ 14). As long as discriminatory intent is not inherent in the explanation given by the prosecution, “the reason offered will be deemed race neutral.” Randall v. State, 716 So.2d 584, 588 (¶ 16) (Miss.1998) (citation omitted). After a race-neutral explanation has been given, “the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory [strike],” i.e., that the reason given was a pretext for discrimination. McFarland, 707 So.2d at 171 (¶ 14). The opponent of the strikes must show that the race-neutral explanation given is merely a pretext for racial discrimination. Berry v. State, '802 So.2d 1033, 1042 (¶ 29) (Miss. 2001).
¶ 30. The record reveals that the State used its three strikes to dismiss African-American venire members. At this point, defense counsel lodged a Batson challenge, contending that the strikes were racially motivated. The trial court informed the State: “[I]t seems like to me, when you strike all African[ ]Americans, I think a pretty good argument could be made that there’s been a prima facie case of discrimination.” The State then offered race-neutral reasons for all three strikes. The State explained that juror number fourteen was struck because her son was convicted of burglary in Rankin County during the term of the current district attorney, whose office was prosecuting Flowers. Juror number fifteen had been employed less than a year, and failed to state her street address on her jury questionnaire form. The State also struck juror number nineteen for failing to completely fill out the questionnaire form.[3] The State explained that it struck juror number twenty-eight because he stated that his uncle pled guilty to a possession charge in Rankin County during the term of the current district attorney. The defense offered no response to this explanation. The trial court ultimately found that the State provided sufficient nondiscriminatory reasons for the strikes, and held that the States’s reasons were not a pretext for discrimination.
¶ 31. Our supreme court has offered guidance to the trial courts by approving a list of race-neutral reasons accepted by other jurisdictions. See Lockett v. State, 517 So.2d 1346, 1356-57 (Miss. 1987). This list includes: living in a “high crime” area, body language, demeanor, a prosecutor’s distrust of the juror, inconsistency between oral responses and a juror’s card, criminal history of a juror or relative, a juror’s employment, and a juror’s religious beliefs. Id. We recognize that this list is not exhaustive. Id. at 1352.
¶ 32. Recognizing that “the trial judge is given great deference in Batson matters,” Perry v. State, 949 So.2d 764, 768 (¶ 12) (Miss.Ct.App.2006), we cannot say that the trial court’s decision to accept the State’s race-neutral explanations for the strikes was clearly erroneous or against the overwhelming weight of the evidence.
J. Ineffective Assistance of Counsel
¶ 33. Flowers next alleges that his trial counsel was ineffective, and Flowers provides a sizeable list of motions and objections he felt should have been made by his trial counsel on his behalf. Several of Flowers’s allegations of ineffective assistance have been addressed in our discus *198 sion of his prior assignments of error, and we decline to readdress those.
¶ 34. We will address, however, Flowers’s sole new assertion of error, his claim that his trial counsel was ineffective for failing to subpoena the Honorable Ermea J. Russell to testify at trial. Flowers claims that he voluntarily surrendered to authorities at Russell’s law office, and that Russell’s potential testimony regarding Flowers’s voluntary surrender would rebut the testimony of Marshall Odom stating that Flowers was “captured” at Russell’s law office.
¶ 35. To prove ineffective assistance of counsel, Jackson must show that: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that a counsel’s performance falls within the range of reasonable professional assistance. Id. at 689, 104 S.Ct. 2052. To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052.
¶ 36. This Court has recognized that when a claim of ineffective assistance of counsel is raised on direct appeal, rather than in a motion for post-conviction relief, the claim should be addressed only when “(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record. Id. at 1102 (¶ 6).
¶ 37. The transcript reflects that Marshall Odom testified that he received a phone call that Flowers was at Russell’s office.. Marshall Odom stated that he had located Flowers earlier that day, but Flowers ran from the law enforcement officers, eluding them. When Marshall Odom received a phone call stating that Flowers was located at Russell’s office, Marshall Odom went to Russell’s office and proceeded to arrest Flowers. Marshall Odom also testified Flowers did not turn himself in to authorities.
¶- 38. Our supreme court has established that “with respect to the overall performance of the attorney,” “counsel’s choice[s] of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim.” Powell v. State, 806 So.2d 1069, 1077 (¶ 18) (Miss.2001) (citing Cole v. State, 666 So.2d 767, 777 (Miss.1995)). Flowers’s counsel’s decision to exclude Russell as a witness at trial must be viewed as falling under the ambit of trial strategy. We find the record fails to “affirmatively show ineffectiveness of constitutional dimensions.” Colenburg, 735 So.2d at 1101 (¶ 5). Accordingly, we deny Flowers’s assignment of error claiming ineffective assistance of counsel without any prejudice to subsequent review on a motion for post-conviction relief.
¶ 39. When we review “whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Herring v. State, 691 So.2d 948, 957 (Miss.1997). Utilizing the applicable standard of review, we find sufficient evi *199 dence in the record to support the jury verdict. Finding no abuse of discretion by the trial court, we affirm Flowers’s conviction and sentence.
¶ 40. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF ARMED ROBBERY AND SENTENCE OF TWENTY-SIX YEARS FOR EACH COUNT, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J„ CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. The record states that these two men are not related to each other.

. Mississippi Code Annotated sections 27-17-415 (Rev.2013) and 97-37-1 (Supp.2013) also refer to a pistol as a "deadly weapon.”

. See Hicks v. State, 973 So.2d 211, 220 (¶ 28) (Miss.2007) (“Inattentiveness alone has been accepted as a race-neutral explanation for the exercise of a peremptory strike.”).